IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:08CR170 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| PARISH SWIFT, ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This matter is before the court on defendant's objection, Filing No. 46, to the report and recommendation ("R&R") of the magistrate judge, Filing No. 43, wherein the magistrate judge granted in part and denied in part defendant's motion to suppress, Filing No. 18. The government has also filed an objection to the magistrate's R&R. Filing No. 50. The defendant, Mr. Parish Swift, is charged in Count I with knowingly possessing a firearm and ammunition in interstate commerce after being previously convicted of a felony and in Count II with the forfeiture of the gun in question. Indictment, Filing No. 1. The magistrate judge recommends that this court grant in part and deny in part defendant's motion to suppress. Specifically, the magistrate judge recommends that the court deny the motion to suppress the search of the house and seizure of the firearms, deny the motion to suppress statements made prior to the *Miranda* warnings, but grant the motion to suppress statements following the reading of the *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436 (1966).

      Pursuant to 28 U.S.C. § 636, the court has conducted a *de novo* determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has carefully reviewed the objections, relevant

law, and the entire record including the transcripts of the motion to suppress hearings, Filing Nos. 39, 45. After reviewing the record and the relevant caselaw, the court determines it will adopt in part and reject in part the report and recommendation of the magistrate judge.

## BACKGROUND

The court accepts the facts set forth in the R&R, as summarized hereafter. The Omaha Police Department responded to a report of shots being fired at 5705 North 57th Street, involving a green Chevy Suburban. Police officers spotted a green Chevy Suburban roughly ten blocks away and followed it as it pulled into the driveway at 4727 North 42nd Street. Two of the individuals, including the defendant, Mr. Swift, left the vehicle and entered the house. They emerged minutes later and the police took the two into custody along with four others who remained with the vehicle. The police received permission to search the house from Anne Lockett, who told the Omaha Police that Mr. Swift is a relative but did not live at the house. During the search of the house, police officers also searched the outside of the house. They found two guns in the curtilage, one in a tire on the north side of the house and another in a trash can.

The officers transported Mr. Swift and the others to the Omaha Police Department headquarters, where the officers placed Mr. Swift in an interrogation room with one of the other individuals, Anthony Harlan. A police officer told the two men that they intended to conduct a gunshot residue test and that someone would be in to talk to them. The interrogation room had video and audio equipment, which the police monitored. Mr. Swift asked why the officers detained Mr. Harlan and him. The officers responded because of the guns. The officers also showed Mr. Swift a picture of the gun on a digital camera. Mr. Swift told police he had nothing to say to them, and then the officer left the room. The

officers left the two men alone in the room for approximately eighteen minutes, during which time Mr. Swift made one of the key statements at issue here today.[1]

After approximately eighteen minutes, Officer Duffek entered the room and read the two men their *Miranda* warnings. In response, Mr. Swift answered no to the last question, which asked about his willingness to talk to the police.[2] After the officer exited the room, post-*Miranda*, Mr. Swift made his second statement.[3] Later, Officer Duffek reread the *Miranda* warning form to Mr. Swift. Mr. Swift changed his mind regarding the final question and agreed at that point to give a statement to the police. However, Mr. Swift did not cooperate and the questioning ended without any additional statements from Mr. Swift. The magistrate judge further credited the testimony of the officers that they believed signs existed in the hallways indicating that the department both videotaped and audiotaped conversations.

The magistrate judge made three legal findings in his report and recommendation. First, the magistrate judge recommended that this court find the search of the house was consensual and extended to the curtilage of the house, and also that Mr. Swift did not have standing to deny the search at any point. This determination is not objected to by either of the parties. Second, the magistrate judge found that Mr. Swift made a statement while in the interrogation room–but prior to the reading of the *Miranda* warnings–and the

---

[1] The statement by Mr. Swift deals with whether certain evidence could be retrieved from the handgun if it had been fired.

[2] The police department's form shows "no" as the answer provided as set forth in the government's Exhibit 1.

[3] Mr. Swift's second statement concerned the fact that he had touched the gun, and he hoped it did not have his fingerprint on the gun.

3

statement was voluntarily given and not coerced by the police or made under interrogation. The magistrate judge, therefore, recommended a denial of the motion to suppress on that issue. Finally, the magistrate judge found that Mr. Swift invoked his right to remain silent when he received his *Miranda* rights. Therefore, the magistrate judge recommended that the court grant motion to suppress as to any statements made after the reading of the *Miranda* warnings but prior to Mr. Swift's later agreement to talk.[4]

The defendant objects to the recommendation to not suppress the statements made prior to the reading of the *Miranda* rights. He does not object to the denial of suppression relating to the search of the house or the seizure of the firearms. He also does not object to the suppression of statements made by Mr. Swift after he received the *Miranda* warnings.

The government has also filed an objection to the R&R. Filing No. 50. Specifically, the government objects to the suppression of the statements made by the defendant after he received the *Miranda* warnings but prior to his later agreement to talk with the police. The government does not object to the portion of the recommendation denying suppression of evidence related to the search of the house or the seizure of the guns. The government also does not object to the denial of suppression relating to the statements made by Mr. Swift prior to receiving the *Miranda* warnings.

## DISCUSSION

### A. Statement made prior to Mr. Swift's receiving the *Miranda* warnings

Mr. Swift argues that the statement he made while inside of an interrogation room

---

[4] The parties stipulated that following the second reading of the *Miranda* warnings, Mr. Swift answered "yes" to the last question on the form and agreed to speak to the police at that point. Filing No. 45 at 20-22.

4

with another suspect should be suppressed. Specifically, Mr. Swift argues that he made statements due to actions by the police that are the "functional equivalent of interrogation." Brief in Support of Objection, Filing No. 47 at 3. Mr. Swift argues that these actions are an attempt by the Omaha Police Department to circumvent the *Miranda* requirements and elicit a self-incriminating statement. *Id.* at 3-4. Mr. Swift also argues that he had no knowledge that the police recorded or videotaped him, and that as a consequence his statements could not have been voluntary. *Id.* at 4.[5]

The magistrate judge denied the suppression of this statement on two grounds. First, the magistrate judge found *Miranda* not applicable at that time. Additionally, the magistrate judge found that even if *Miranda* applied at that time, no police coercion existed and Mr. Swift made voluntary statements. Filing No. 45 at 33.

The Fifth Amendment protection against self-incrimination prohibits the admission of statements given by a suspect during "custodial interrogation" without a prior warning from the police. *Illinois v. Perkins,* 496 U.S. 292, 296 (1990) (citing *Miranda v. Arizona,* 384 U.S. 436 (1966)). The *Miranda* warnings are meant to preserve the privilege due to inherent pressures in custodial interrogations which compel a person to speak when he otherwise would not do so freely. *Id.* at 296. The Supreme Court's decision in *Miranda* is to be strictly enforced, but only in situations "in which the concerns that powered the [*Miranda*] decision are implicated." *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). Any statement given freely and voluntarily is admissible in evidence. *Id.* at 297.

---

[5]Officer Duffek testified that the purpose of leaving the two defendants in the interrogation room together was to "observe them and see if any statements were made." Filing No. 39, at 38:9-17. Mr. Swift knew the police observed him, but he had no knowledge about the audio. Officer Duffek testified that he believed that there are signs in the police department that give warnings of audio and video taping. *Id*. at 38:24-39:6.

"*Miranda* was not meant to protect suspects from boasting about their criminal activities in front of persons whom they believe to be their cellmates." *Id.* at 298. The court in *Perkins* allowed the admission of a statement when an undercover officer posed as a fellow inmate and garnered incriminating statements without giving any *Miranda* warnings beforehand. *Id.* at 300. The requirements of *Miranda* are triggered only when there is a defendant in the custody of the police who is being interrogated. *United States v. Boyd, 180 F.3d 967, 976 (8th Cir. 1999)*. A statement made by a suspect that is purely voluntary and not in response to interrogation by the police is admissible without any *Miranda* warnings. *United States v. Head, 407 F.3d 925, 928 (8th Cir. 2005)*.

In the present case, the court agrees with the magistrate judge's recommendation that Mr. Swift made voluntary statements. Here Mr. Harlan, the other person in the room with Mr. Swift, did not serve as an undercover agent of the police; that the police treated him as a fellow suspect in custody; and that the police did not interrogate or coerce Mr. Swift in any way. Accordingly, the objections of the defendant are overruled.

**B. Statement made by Mr. Swift after receiving the initial *Miranda* warnings**

The government argues that this court should not suppress the incriminating statement made by Mr. Swift after Omaha Police Officer Chris Duffek read the *Miranda* warnings to Mr. Swift.[6] The government argues that Mr. Swift made voluntary statements to Mr. Harlan following the *Miranda* warnings, and these statements did not result from a custodial interrogation.

---

[6] It appears from the record that Officer Duffek began to read defendant his *Miranda* rights. Before Officer Duffek could actually read the rights, defendant said "no" to the last question. Approximately five to ten minutes later, Officer Duffek read defendant his *Miranda* rights again. The defendant said "yes" to the last question, but in fact did not talk to the police officers.

The magistrate judge suppressed statements made after Officer Duffek first entered the room and read the *Miranda* warnings to both Mr. Swift and Mr. Harlan, but prior to Mr. Swift's later decision to speak with the police. Filing No. 45 at 34. The magistrate judge found *Miranda* applicable after Mr. Swift said "no" and found that any statements from that point forward until Mr. Swift indicated "yes" inadmissible.

This court disagrees. The parties agree that at that the time in question both Mr. Swift and Mr. Harlan are in custody; Mr. Swift has already made one volunteered comment; Mr. Swift has indicated he did not want to waive his rights and talk with the officers; and the officers admit they are hoping for additional incriminatory statements. There is no allegation that Mr. Harlan acted as an agent of the police. "[P]olice do not interrogate a suspect simply by hoping he will confess." *Arizona v. Mauro*, 481 U.S. 520, 521 (1987) (suspect's wife allowed to speak to him; conversation recorded and police knew that defendant might possibly incriminate himself.). While it is true that Mr. Swift remained in custody at the time, the police did not interrogate him at any time. The Eighth Circuit has stated: "To be protected by the Fifth Amendment, the statements must have been made while in police custody and in response to police interrogation, *see Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966), or its 'functional equivalent.' *See also Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed.2d 297 (1980)." *Louisell v. Director of Iowa Dept. of Corrections*, 178 F3d 1019, 1023 (8th Cir. 1999) (same). "Interrogation under *Miranda* includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' *Rhode Island v. Innis*, 446 U.S.

291, 300-01, 100 S. Ct. 1682, 64 L. Ed.2d 297 (1980) (footnotes omitted)." *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005).  This investigatory technique boarders on the "functional equivalent" to interrogation because the officers reasonably believed the defendant would continue to share information with his compatriot after he received his Miranda warnings.  Thanks to Mr. Swift's intemperate rambling the police were effectively interrogating him without asking any questions.  However, the police did not at any time interrogate Mr. Swift nor did they coerce Mr. Swift.  In addition, the police station has signs indicating that both audio and video taping occurs.  The police conduct in question is within the legal precedents noted above.  Accordingly, the objections of the government are granted and the report and recommendation of the magistrate judge is not accepted as to the post-*Miranda* statement.

THEREFORE, IT IS ORDERED that:

1.   The report and recommendation of the magistrate judge, Filing No. 43, is adopted in part and rejected in part as set forth herein.

2.   The objection of the defendant, Filing No. 46, is overruled as set forth herein.

3.   The objection of the government, Filing No. 50, is granted in part as set forth herein.

4..   The motion to suppress, Filing No. 18, is denied.

DATED this 10th day of December, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge